**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIO WILLIS,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendant. | No. 1:25-CV-15001<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Mario Willis ("Willis" or "Plaintiff") brought this suit against his former employer Amazon.com Services LLC ("Amazon" or "Defendant"), alleging unlawful race and disability discrimination, sexual harassment, and retaliation in violation of the Illinois Human Rights Act ("IHRA"). Amazon moves to dismiss his claims for race discrimination, alleged in Count II, and sexual harassment, alleged in Count III, under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied as to Count II and granted as to Count III.

## Legal Standard

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citation omitted). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While detailed factual allegations are not required, the complaint

must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023). In evaluating a motion to dismiss a discrimination claim, "these requirements mean a plaintiff must advance plausible allegations that [he] experienced discrimination because of [his] protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022).

**Background**

Willis is a black man who began working for Amazon as a packer in November 2021. R. 1-1 ¶¶ 7–8, 11. When he was hired, Willis informed Amazon that he was born without thumbs, which would make packing slower and more difficult for him. *Id.* ¶ 13. To accommodate his disability, a manager told Willis that he would not be subject to the same performance quotas as his non-disabled counterparts. *Id.* ¶ 13.

In February of 2022, a white supervisor filed a complaint about Willis to Human Resources ("HR"). *Id.* ¶ 14. As a result, Willis was counseled by HR and told he looked mean and made his co-workers uncomfortable. *Id.* A few days later, Willis' supervisor filed another complaint against him for working too slowly. *Id.* ¶ 16. HR met with Willis again and counseled him for his purportedly subpar work rate. *Id.*

After the second HR counseling, Willis reported that he felt discriminated against. *Id.* ¶ 17. Following this report, Willis' supervisor ordered him to HR. *Id.* Willis was subsequently suspended with pay for 3 days. *Id.* When he returned, Willis was issued four disciplinary write-ups which he was required to sign keep his job. *Id.* ¶ 18. Willis asked to be moved to a different position under a different supervisor and was subsequently reassigned. *Id.* ¶ 19.

On February 20, 2023, Willis witnessed Shirley Reese, a female coworker, grab, slap, and swipe the backside of Candice Plunkett, another female coworker. *Id.* ¶ 21. Plunkett reported the incident and informed Amazon that Willis was a witness. *Id.* ¶ 22. Plunkett told Willis that Amazon closed the complaint on May 5, 2023, without disciplining Reese. *Id.* ¶ 23. Five days later, Plunkett called the police to make a criminal complaint. *Id* ¶ 24. That same day, an Amazon investigator questioned Willis about the incident. *Id.* ¶ 25. After Willis stated that he wasn't comfortable answering further questions, the investigator told Willis he would be fired if he did not answer. *Id.* On May 26, 2023, an Amazon representative called Willis and stated that Willis was being fired for inappropriately touching someone, an allegation which Plaintiff denies. *Id.* ¶ 26–27.

## Discussion

### I. Race Discrimination

Employment discrimination claims are subject to a relatively modest pleading burden. Plaintiff need not plead facts corresponding to each element. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) ("We hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination"). Indeed,

the Seventh Circuit has cautioned against "[d]emanding details about loss in the complaint" because although a complaint must allege some injury, it "need not narrate the *quantum* of injury." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) (emphasis original). Instead, "[a]ll the complaint need do is state a grievance….[d]etails and proofs come later." *Id.* at 1338.

Under that pleading standard, Plaintiff need only plausibly allege that race was a motivating factor in an employment action that caused "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024); *see also Freeman v. Metro. Water Reclamation Dist. of Greater Chi.,* 927 F.3d 961, 965 (7th Cir. 2019) (a plaintiff need "only to allege . . . that [his employer] fired him because of his race."); *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998) ("all a complaint has to say" is "I was turned down for a job because of my race."). Thus, the relevant question here is whether the Complaint plausibly alleges that Plaintiff was subjected to some disadvantage in his employment in part because of his race. Drawing all inferences in Plaintiff's favor, the Court finds that Count II meets that burden.

Plaintiff alleges that in February 2022 HR warned him that he "looked mean and made his co-workers uncomfortable," an assessment Count II characterizes as reflecting racial stereotypes. R. 1-1 ¶¶ 14, 49. A few days later, after further counseling, Plaintiff told HR and his supervisor that he believed he was being discriminated against. *Id.* ¶¶ 16–17. Plaintiff was then subjected to additional counseling, suspended from work for three days, and, upon his return, issued four

disciplinary write-ups that he was required to sign to retain his employment. *Id.* ¶¶ 16–18. Although the surrounding allegations indicate that Plaintiff's report of discrimination included disability as well, the Court does not view allegations bearing on motive in isolation. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016) (requiring relevant evidence of discriminatory causation to be considered as a whole). Taken together—the alleged racial stereotyping, Plaintiff's ensuing complaint of discrimination,[1] the disciplinary actions that followed, and Count II's express allegation that Defendant disciplined Plaintiff based on racial stereotypes—the allegations plausibly support an inference that race played a role in the challenged disciplinary actions.

Defendant characterizes those disciplinary measures as routine "coaching" and a paid suspension, suggesting that neither altered any term or condition of Plaintiff's employment. R. 14 at 4. The Complaint, however, alleges an escalating sequence of disciplinary measures: Plaintiff was counseled by HR, involuntarily removed from work for three days, and then was required to sign four disciplinary write-ups to retain his employment. Viewed together and drawing reasonable inferences in

---

[1] Discipline imposed because an employee complained about discrimination would constitute *retaliation* for protected conduct, which is analytically distinct from discrimination based on protected status. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). However, the fact that an allegation may also bear on a retaliation theory does not require the Court to disregard it when assessing the surrounding circumstances bearing on discriminatory motive. *See Ortiz*, 834 F.3d at 765–66; *see also Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 170 (4th Cir. 2024) (observing that "there is some evidentiary overlap between discrimination and retaliation"). At this stage, the Court therefore considers Plaintiff's complaint of discrimination and the response that followed as part of the factual context of Count II.

Plaintiff's favor, those allegations plausibly describe a disadvantage with respect to the terms or conditions of his employment, rather than mere workplace criticism.

Formal disciplinary measures like those alleged in the Complaint may harm an employee's career prospects, promotional opportunities or other terms and conditions of employment.[2] That the Complaint does not explicitly allege those downstream consequences does not defeat the claim. On a motion to dismiss, the Court may draw reasonable inferences of harm from the adverse employment actions alleged. In *Thomas* the plaintiff alleged that his training had been delayed but did not separately allege that the delay affected his compensation or advancement. 120 F.4th at 1337–38. The Seventh Circuit nevertheless concluded that the allegation entailed "some harm," reasoning that "[d]eferred training can mean deferred promotions or deferred raises." *Id.* at 1337. In making that inference, the *Thomas* Court emphasized that a plaintiff is entitled to "the benefit of [the court's] imagination, so long as the hypotheses are consistent with the complaint." *Id.* at 1338.

Consistent with those principles, the Court finds that Plaintiff's allegations of a three-day suspension and formal disciplinary write-ups plausibly permit an inference of some employment-related disadvantage, including effects on career

[2] *See Paterakos v. City of Chicago*, 147 F.4th 787, 796 (7th Cir. 2025) (recognizing that terms and conditions of employment encompass harm to an employee's "career prospects"); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (recognizing that disciplinary warnings may be adverse where they affect promotion, transfer, or advantageous responsibilities); *See also Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 885 (6th Cir. 2024)("Likewise, one might reasonably argue that a temporary suspension (even with pay) causes "some harm" and also concerns a "term or condition" of the job—all that *Muldrow* now requires under Title VII.").

prospects such as promotions or raises. Whether Plaintiff can ultimately prove that those measures caused such harm, or were motivated by his race, is better resolved on a developed record. At this stage, the allegations in the Complaint are sufficient to plausibly state a claim for race discrimination. Defendant's motion to dismiss Count II is therefore denied.

II. Sexual Harassment

On a motion to dismiss, Plaintiff need not allege facts corresponding to each element of a sexual harassment claim. *Id.* at 1338 (citing *Swierkiewicz*, 534 U.S. at 510). Instead, he need only plead a plausible claim that gives Defendant fair notice of his grievance. *Id.* Here, however, Plaintiff's allegations fail because they do not adequately allege that he was subjected to sexual harassment because of his sex.

Plaintiff's sexual harassment claim rests on his witnessing Reese grab, slap, and swipe the buttocks of Plunkett. R. 1-1 ¶ 21. In his opposition brief, Plaintiff argues that witnessing that conduct placed him within the "target area" of sexual harassment. R. 19 at 6. Plaintiff's cited case, *Yuknis v. First Student*, Inc., 481 F.3d 552 (7th Cir. 2007), rejects that argument. In *Yuknis*, the Court noted that a bystander could be in the target area of harassment where he was part of the protected class "being vilified" even if he was not specifically "singled out" for harassment. *Id.* at 554. The Court explicitly noted that harassing conduct directed at women in the workplace does not place a male observer within its target area. *Id.* Nothing alleged here suggests that Reese's conduct toward Plunkett was directed at Willis, at a man, at men generally, or at any protected group of which Willis is a

member. Willis therefore does not plausibly allege that he was within the target area of sexual harassment.

Plaintiff also argues that he states an IHRA claim because he "rejected" sexual harassment by reporting Reese's conduct. R. 19 at 6. But that argument suffers from a basic problem: the Complaint alleges that Plunkett—not Plaintiff—reported Reese. *See* R. 1-1 ¶ 22. Plaintiff's subsequent participation as a witness may support his separately pleaded retaliation claim, but it does not itself establish that he endured unwelcome sexual harassment. *See Ridenour v. Colectivo Coffee Roasters, Inc.*, No. 25 CV 2040, 2025 WL 2930795, at *3–4 (N.D. Ill. Oct. 15, 2025) (dismissing sexual harassment claim based on plaintiff witnessing "numerous allegations of harassment experienced by other female employees" but allowing related retaliation claim to proceed.). Accordingly, Plaintiff's role as a witness to harassment directed at another does not transform that conduct into harassment directed at him.

Because the Complaint does not plausibly allege that Willis was subjected to unwelcome sexual harassment because of his sex, Count III is dismissed without prejudice.[3]

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is denied as to Count II and granted as to Count III. Count III is dismissed without prejudice. Plaintiff may

[3] The Court need not reach Defendant's additional arguments regarding whether the alleged conduct was sufficiently severe or pervasive or whether Plaintiff's "rejection" theory otherwise falls within the IHRA's definition of sexual harassment. While those arguments present additional substantial obstacles to Count III, resolution of them is unnecessary to the Court's disposition.

file an amended complaint by October 13, 2026, if he believes he can cure the deficiencies identified herein.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: September 11, 2026